# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**EVAN J. HERRON,**

        **Plaintiff,**　　　　　　　　　　Case No. 18-cv-12171

   v.　　　　　　　　　　　　　　　　District Judge Sean F. Cox

**COMMISSIONER OF**　　　　　　　　Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Evan J. Herron seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 17). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**, and that the case be dismissed in its entirety.

## II.     PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") on August 16, 2016, alleging that he has been disabled since August 1, 2015. (TR 151–56.) The Social Security Administration initially denied Plaintiff's claims on September 28, 2016. (TR 89–92.) On January 8, 2018, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Dennis M. Matulewicz. (TR 28–52.)

On February 15, 2018, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 11–24.) Plaintiff requested review by the Appeals Council, which was denied on May 23, 2018. (TR 1–3.) On July 11, 2018, Plaintiff commenced this action for judicial review. (Docket no. 1.) The parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 13; docket no. 17.)

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues. (Docket no. 13, pp. 4–8.) In addition, the ALJ summarized Plaintiff's medical record (TR 16–23), and Defendant adopted the ALJ's recitation of the facts (docket no. 17, p. 4). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff had not performed substantial gainful activity since the application date. (TR 16.) In addition, the ALJ found that Plaintiff had the following severe

impairments: "morbid obesity, major depressive disorder, left eye blindness (from 2000 gunshot wound), chronic pain syndrome, mild intermittent asthma, left foot early arthritic changes, generalized anxiety disorder, and affective disorder." (*Id.*) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a), subject to the following non-exertional limitations:

- Plaintiff can lift up to five pounds frequently and up to ten pounds occasionally.
- Plaintiff can sit for six hours of an eight-hour workday and stand/walk for two hours of an eight-hour workday.
- Plaintiff cannot climb ladders or scaffolds.
- Plaintiff can only occasionally stoop, crouch, and climb ramps or stairs.
- Plaintiff cannot kneel or crawl.
- Plaintiff should avoid walking on uneven surfaces.
- Plaintiff must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibrations, fumes, odors, dust, gases, and poor ventilation.
- Plaintiff cannot work with hazards including dangerous/unprotected machinery, or work at unprotected heights.
- Plaintiff can occasionally bend, twist, and turn at the waist.
- Plaintiff cannot work with small items or read small print.
- Plaintiff requires simple, unskilled work with a specific vocational preparation (SVP) rating of one or two.
- Plaintiff can have occasional contact or discussion with coworkers.
- Plaintiff should have only occasional contact with and direction from a supervisor.

- Plaintiff requires routine work that does not require changes or adaptations in work settings or duties more than once per mouth.

- Plaintiff requires work that does not require him to take initiative or make independent decisions.

- Plaintiff cannot have direct interactive contact with the public.

- Plaintiff cannot be subject to production quotas mandating a specific number or pieces per hour or have a down line coworker depending on his productivity.

- Plaintiff cannot engage in teamwork.

(TR 18.) Based on this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of jobs that exist in significant numbers in the national economy, including final assembler and bench hand. (TR 23–24.) Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since the application date. (TR 24.)

**V.    LAW AND ANALYSIS**

**A.    Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

    **B.**    **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past

5

work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

Plaintiff contends that the ALJ erred by declining to adopt additional limitations based on his obesity. (Docket no. 13, pp. 11–14.) In addition, Plaintiff asserts that the ALJ failed to give good reasons for assigning only little weight to the opinion of his treating psychiatrist, Dr. Suhasini Mistry. (*Id.* at 14–17.)

#### 1. Obesity

Plaintiff alleges that the ALJ "failed to consider the impact of Plaintiff's extreme obesity on his functional limitations." (*Id.* at 11.)

As noted above, the ALJ determined that Plaintiff's obesity was a severe impairment. (TR 16.) In addressing Plaintiff's functional limitations, the ALJ observed that Plaintiff testified that his obesity made it difficult to walk and stand for extended periods. (TR 19.) The ALJ also emphasized treatment records reflecting that Plaintiff's back pain was controlled with physical therapy and medication and that Plaintiff failed to adhere to prescribed exercise. (TR 21 (citing TR 488, 502).) Based on that analysis, the ALJ determined that Plaintiff could perform sedentary

work, limited to lifting five pounds frequently and up to ten pounds occasionally, sitting for six hours of an eight-hour workday, and standing or walking for two hours of an eight-hour workday. (TR 18.)

Plaintiff contends in general that the ALJ should have imposed additional functional limitations related to his obesity but declines to cite any particular limitations beyond those imposed by the RFC. Somewhat to the contrary, Plaintiff cites *Sleight v. Comm'r of Soc. Sec.*, 896 F. Supp. 2d 622, 633 (E.D. Mich. 2012), for the position that:

> [T]he ALJ should have at least provided a limited discussion of [the] claimant's obesity—even if it was to simply advise the claimant and the Court along the following lines: "Because the claimant has not identified specifically how her obesity limits her functionally, and because no 'assumptions' about obesity may be drawn under S.S.R. 02–1p, the undersigned concludes that the claimant's obesity does not affect the step three, four, or five analysis."

(Docket no. 13, p. 14.)

But the ALJ in this case did discuss Plaintiff's obesity and expressly considered its impact on his other impairments. Moreover, the court in *Sleight* suggested that the failure to devote more discussion to the claimant's obesity would not by itself warrant remand. *Sleight*, 896 F. Supp. 2d at 634 ("Despite this Court's reservations, if the ALJ's analysis of Plaintiff's obesity were this Court's sole concern, remand may not be warranted.").

Accordingly, the ALJ did not err by declining to adopt additional limitations based on Plaintiff's obesity.

### 2. *Analysis of Dr. Mistry's Opinion*

Plaintiff also contends that the ALJ failed to give good reasons for assigning only limited weight to the opinion of his treating psychologist, Dr. Mistry. (Docket no. 13, pp. 14–17.)

Under the treating physician rule, the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

If the ALJ declines to give a treating source's opinion controlling weight, she must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). But the ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide "good reasons" for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017); 20 C.F.R. § 404.1527(d)(2). Such good reasons must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p (S.S.A. July 2, 1996).

In a "mental impairment questionnaire" dated December 22, 2016, Dr. Mistry diagnosed Plaintiff with depression and anxiety. (TR 389.) He noted that Plaintiff was prescribed gabapentin and Wellbutrin and experienced fatigue as a side effect. (*Id.*) Dr. Mistry opined that Plaintiff was

8

"unable to meet competitive standards" in every "mental aptitude needed to do unskilled work," including remembering and carrying out short and simple instructions and maintaining attention for a two-hour segment. (TR 390.) Apparently having misread the instructions on the third page of the questionnaire, Dr. Mistry listed three areas in which Plaintiff was limited instead of, as the form directs, "explain[ing] [the] limitations" that fell into the three most severe classifications (i.e., "seriously limited," "unable to meet competitive standards," and "no useful ability to function") and "includ[ing] the medical/clinical findings that support this assessment." (TR 391.)

The ALJ gave only limited weight to Dr. Mistry's opinion, reasoning that "[t]he treatment records do not support such extreme limitations" and that the opinion "do[es] not appear to take into account the claimant's frequent non-compliance with treatment," which was relevant because "[t]he claimant reported that his symptoms improved when he took his medication." (TR 22.)

As the ALJ summarized, Plaintiff's memory and attention span were "normal" in October 2017. (TR 494.) In addition, Plaintiff often reported noncompliance with his medications, even though he acknowledged that they reduced his symptoms. (TR 385, 424, 493)

This analysis demonstrates that Dr. Mistry's opinion was not "supportab[le]" and/or "consisten[t] . . . with the record as a whole." *See* 20 C.F.R. § 404.1527(d)(2). Moreover, Dr. Mistry's opinion refers to no objective testing in support of his proposed limitations. *See* 20 C.F.R. § 404.1527(d)(2) (A treating-source opinion should be supported by "medically acceptable clinical and laboratory diagnostic techniques.").

Accordingly, the ALJ provided good reasons for giving only little weight to Dr. Mistry's opinion.

## VI. CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**, and that the case dismissed in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  August 6, 2019          s/Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  August 6, 2019          s/Sandra Osorio
                                            Acting Case Manager